UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
JOSEPH CARLOS LUPERCIO,

Petitioner,

v.

KENNETH GENALO, *et al.*,

Respondents.
---------------------------------------------------------x

**MEMORANDUM AND ORDER**
26-CV-05321 (OEM)

ORELIA E. MERCHANT, United States District Judge:

On August 28, 2026, petitioner Joseph Carlos Lupercio ("Petitioner") filed a petition for a writ of habeas corpus against respondents Markwayne Mullin, in his official capacity as Secretary of Homeland Security; Kenneth Genalo, in his official capacity as Field Office Director for United States Immigration and Customs Enforcement ("ICE"); Todd Blanche, in his official capacity as Attorney General of the United States; and Raul Maldonado, Jr., in his official capacity as Warden, Metropolitan Detention Center ("MDC") ("Respondents"). *See generally* Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, Dkt. 1 ("Petition" or "Pet."). On September 1, 2026, Petitioner filed an amended petition, challenging the lawfulness of his ongoing detention under the Fifth Amendment of the U.S. Constitution ("Fifth Amendment"). *See generally* First Amended Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, Dkt. 11 ("Amended Petition" or "Am. Pet."). Petitioner seeks his immediate release from custody or, alternatively, a bond hearing where the Respondents bear the burden of proof and alternatives to detention are considered, and ability to pay is considered in setting any bond. *See id.*

For the following reasons, Petitioner's request for a bond hearing is granted.

## BACKGROUND

### A. Petitioner's History

Petitioner was born in Mexico in 1990 and brought to the United States as a child in approximately 1992. Am. Pet. ¶ 20. In 2009, he graduated from a New York high school and between 2013 and 2019, he was a beneficiary of the DACA program. *Id.* He is a resident of Spring Valley, New York. *Id.* ¶ 19. He is married to a U.S. citizen and is a stepfather to a U.S. citizen child. *Id.*

When he was younger, Petitioner struggled with substance dependence. *Id.* ¶ 22. He has been arrested four times. *Id.* ¶ 23. On November 23, 2009, Petitioner was arrested and charged with N.Y. Penal Law § 240.20(7) (disorderly conduct violation), N.Y. Veh. & Traf. Law §§ 1192(4) (driving while ability impaired), 509(1) (driving without a license infraction), 375(12-a)(b)(2) (tinted windows infraction), 375(35)(c) (unsafe tires infraction), and 1229-C(3) (seatbelt infraction). *Id.* ¶ 24. On April 19, 2010, he pled guilty to N.Y. Penal Law § 240.20(7) and was ordered to pay surcharges and fines. *Id.* On June 13, 2015, Petitioner was arrested and charged with N.Y. Penal Law § 240.20(7) (disorderly conduct violation, as well as N.Y. Ven & Traf. Law §§ 1192(4) (driving under the influence) and 402(1) (license plate violation). *Id.* ¶ 25.

On June 7, 2016, he pled guilty to N.Y. Penal Law § 240.20(7) and was ordered to pay surcharges and fines. *Id.* On March 30, 2018, Petitioner was arrested and charged with N.Y. Penal Law §§ 220.39(1) (third-degree sale of a controlled substance), 220.41(1) (second-degree sale of a controlled substance), and 220.16(1) (third-degree possession of a controlled substance). *Id.* ¶ 26.

On May 2, 2019, Petitioner was arrested and charged with N.Y. Penal Law §§ 220.03 (seventh-degree possession of a controlled substance), 220.06(5) (fifth-degree possession of a

controlled substance, and 270.25 (unlawful fleeing of a police officer in a motor vehicle), as well as N.Y. Veh. & Traf. Law §§ 511(1)(a) (facilitating aggravated unlicensed operation of a motor vehicle), 1212 (reckless driving), 1180(a) (imprudent speed infraction), 1111(d)(1) (owner liability for failure of operator to comply with traffic-control indications infraction), 1125(a)(1) (driving left on crest grade infraction), 1180(d) (speed violation infraction), and 375(41) (unauthorized colored lights on vehicle infraction). *Id.* ¶ 27.

On February 11, 2021, in satisfaction of the charges from the 2018 and 2019 arrests, Petitioner pled guilty to N.Y. Penal Law § 220.16(12) (third-degree possession of a controlled substance). *Id.* ¶ 28. Petitioner completed a drug court treatment program, after which he was offered a plea. *Id.* Petitioner was sentenced to 5 years of probation and a payment of restitution, surcharges, and fines. *Id.* Petitioner completed his 5-year probation on February 10, 2026, without incident. *Id.* ¶ 29.

**B. Petitioner's Arrest by ICE and Subsequent Detention**

On or about January 8, 2026, ICE arrested Petitioner as he was leaving a probation appointment, and detained Petitioner at Orange County Correctional Facility ("OCCF") under 8 U.S.C. § 1225(b). *Id.* ¶¶ 31, 53; Reply at 3. That same day, ICE initiated removal proceedings by filing a notice to appear ("NTA") with the immigration court, charging Petitioner with inadmissibility pursuant to 8 U.S.C. §§ 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I). Am. Pet. ¶ 32; Declaration of Deportation Officer Rothshild Sanon ¶ 12, Dkt. 15-1 ("Sanon Decl.").

After several adjournments of his preliminary hearing before the immigration court, on February 2, 2026, the immigration judge ("IJ") sustained the charges of inadmissibility against him and ordered Petitioner to file applications for relief by his next hearing date. Am. Pet. ¶ 36. On February 3, 2026, ICE transferred Petitioner to MDC, which "resulted in a cancelled video

visit at OCCF, and counsel then experienced delays in registering for attorney visitation at MDC." *Id.* ¶ 37.

On February 22, 2026, Petitioner filed the Form I-589, application for asylum, withholding of removal, and protection under the Convention Against Torture. *Id.* ¶ 39.

On March 16, 2026, ICE transferred Petitioner to Delaney Hall in Newark, New Jersey, for the purpose of marrying his partner because MDC does not facilitate marriages. *Id.* ¶ 41. As a result, his proceedings were administratively transferred to the immigration court in Elizabeth, New Jersey. *Id.* ¶ 42.

On April 9, 2026, Petitioner married his partner, *id.* ¶ 44, and on April 10, 2026, ICE transferred Petitioner back to MDC and his proceedings were administratively transferred to the Varick Street Immigration Court in New York City, *id.* ¶ 45.

On April 16, 2026, Petitioner filed an application for cancellation of removal with the immigration court. *Id.* ¶ 46.

On April 22, 2026, Petitioner appeared for his final preliminary hearing before the immigration court and the IJ scheduled his final merits hearing for May 12, 2026. *Id.* ¶ 47.

On May 12, 2026, ICE conducted a review of custody determination forms and prepared a Form I-286, Notice of Custody Determination for Petitioner, which petitioner acknowledged and signed when he was served on May 28, 2026. Sanon Decl. ¶ 31.

On May 14, 2026, the IJ orally denied Petitioner's applications for relief, denied post-conclusion voluntary departure under 8 U.S.C. § 1229c(b), which would have allowed Petitioner to be removed without a removal order and facilitated his ability to apply for an immigrant visa through his wife, and ordered Petitioner removed to Mexico. *Id.* ¶ 48; Sanon Decl. ¶ 32; *see* Sanon Decl., Exhibit D, Dkt. 15-5 ("IJ Bond Decision").

On June 2, 2026, Petitioner filed a motion asking the IJ to reconsider his denial of voluntary departure, to which ICE responded that it did not oppose voluntary departure. Am. Pet. ¶ 49. On June 11, 2026, the IJ denied the motion to reconsider. *Id.*

On June 15, 2026, Petitioner filed a notice of appeal with the Board of Immigration Appeals ("BIA"), which remains pending at this time. *Id.* ¶ 50.

On June 9, 2026, ICE interviewed Petitioner and completed a worksheet pursuant to *Velesaca v. Decker*, 20-cv-1803 (S.D.N.Y.) ("*Velesaca* Worksheet"). Sanon Decl. ¶ 33; *see* Sanon Decl., Exhibit E, Dkt. 15-7 ("INA § 236(a) Initial Custody Determination"). ICE determined that Petitioner failed to establish that he did not pose a danger to persons or property given his previous criminal arrests. Sanon Decl. ¶ 33.

**C. Petitioner's First Habeas Petition**

On April 10, 2026, Petitioner filed a petition for a writ of habeas corpus challenging his unlawful detention and seeking immediate release or, in the alternative, a bond hearing. Am. Pet. ¶ 54; *see Lupercio v. Maldonado*, 26-cv-2135 (ERK) (E.D.N.Y.). He pleaded three causes of action: that ICE had improperly subjected Petitioner to mandatory detention in violation of the INA, that this improper detention violated his procedural due process rights; and that his unlawful detention violated the Administrative Procedure Act. Am. Pet. ¶ 54. The court ordered the respondents show cause or, if they took the position that Petitioner's arguments did not meaningfully differ from the court's prior decisions, they were to either afford Petitioner a bond hearing under 8 U.S.C. § 1226(a) or release him on or before April 27, 2026. *Id.* ¶ 55. The immigration court then scheduled Petitioner for a bond hearing on April 21, 2026. *Id.* ¶ 56.

On April 15, 2026, Petitioner requested the district court order that he receive a bond hearing at which respondents bore the burden of proof and at which alternatives to detention are considered. *Id.* ¶ 57. The court denied the request in a docket order on April 20, 2026. *Id.*

On April 17, 2026, Petitioner filed evidence in support of his bond application. *Id.* ¶ 58. On April 21, 2026, the IJ denied Petitioner's bond, finding that he had failed to demonstrate that he was not a danger to the community. *Id.* ¶ 59.

On May 6, 2026, Petitioner filed a letter with the district court seeking a new bond hearing at which the respondents bore the burden of proof to establish dangerousness and flight risk by clear and convincing evidence. *Id.* ¶ 60. On July 5, 2026, the court denied the request. *Id.* ¶ 61.

**D. Petitioner's Second Habeas Petition**

On August 28, 2026, Petitioner filed the instant Petition. *See* Pet.; Return at 3. After the Petition was filed, Petitioner was transferred from MDC to Delaney Hall, where he currently remains detained. Response to Order to Show Cause at 3, Dkt. 15 ("Return").

On September 9, 2026, the Court held a hearing on Petitioner's Order to Show Cause. *See* Minute Entry, dated Sep. 9, 2026 ("Hearing").

## DISCUSSION

Petitioner asserts that his prolonged detention violates his due process rights under the Fifth Amendment and he requests to be immediately released from ICE custody or, alternatively, that he receive "a constitutionally adequate bond hearing before this Court or another neutral adjudicator at which Respondents bear the burden of proof to establish flight risk and dangerousness by clear and convincing evidence and, further, at which alternatives to detention are considered as to both elements and ability to pay is considered in setting any bond." Am. Pet. ¶¶ 4, 99-101. Respondents argue that the Amended Petition should be denied because Petitioner

is not entitled to a burden-shifted bond hearing under *Velasco Lopez v. Decker*, 978 F.3d 842, 849 (2d Cir. 2020), 8 U.S.C. § 1226(a), or the applicable regulations. Return at 4-5.

The parties agree that Petitioner is detained under 8 U.S.C. § 1226(a), *see* Return at 3; Am. Pet. at 15. Thus, the Court begins by addressing whether Petitioner's prolonged detention violates his due process rights, before considering whether a burden-shifted bond hearing or Petitioner's immediate release is warranted.

**A. Due Process**

The Second Circuit has held that the *Mathews v. Eldridge*, 424 U.S. 319 (1976), three-factor balancing test applies when determining the adequacy of process in the context of civil immigration confinement. *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

With respect to the first prong of the *Mathews* test, Petitioner invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). At the Hearing, the parties did not dispute that this factor is satisfied.

With respect to the second prong of the *Mathews* test, Petitioner asserts that having to bear the burden of proving that he is neither dangerous nor a risk of flight at his bond hearing presents a high risk of erroneous deprivation under *Velasco Lopez*. Am. Pet. ¶ 74. Respondents argue that *Velasco Lopez* is distinguishable because Petitioner has been detained for significantly less time, Petitioner's first bond hearing was more robust than the detainee's bond hearing in *Velasco Lopez*, and the undisputed evidence of danger is far more compelling.[1] Return at 5.

This prong weighs in Petitioner's favor. The BIA has determined that "[t]he burden is on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond." *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *see also* 8 C.F.R. § 1236.1(c)(8). However, the IJ's requirement that Petitioner prove a negative (that he is not a danger or flight risk), *see* IJ Bond Determination at 5:22-24, is cause for concern. *Velasco Lopez* is instructive. There, the detainee was detained for 15 months after being arrested for driving while intoxicated and was facing charges related to a bar fight. *Velasco Lopez*, 978 F.3d at 847. Although neither charge had resulted in a conviction and the charges related to the bar fight were dismissed, the petitioner was twice denied bond as he was unable to carry the burden of proving he was neither dangerous nor a flight risk. *Id.* The petitioner subsequently filed a petition for a writ of habeas corpus challenging the procedures employed in his bond hearings on due process grounds. *Id.* at 847-48. The district court granted the petition and ordered a new bond hearing where the government was required to prove he was a danger to the community or a flight risk by clear and convincing evidence. *Id.* at 848. When afforded the new hearing with the shifted burden, the petitioner was released on bond. *Id.* The Second Circuit affirmed the district court's decision,

[1] The Court does not opine on Respondents' third argument, as the question of whether the IJ weighed the evidence appropriately is not properly before this Court. *See* 8 U.S.C. § 1226(e).

concluding that the court correctly ordered a new bond hearing where the government bore the burden of proof. *Id.* at 846.

Here, Petitioner has been detained for eight months, having been denied bond after bearing the burden to prove and subsequently being unable to prove that he is neither dangerous nor a flight risk due to his criminal history. *See* IJ Bond Decision at 59:10-12. The IJ Bond Decision reflects that the procedural requirement of proving a negative "seriously impacted his ability to secure bail," *Velasco Lopez*, 978 F.3d at 852, as the IJ noted that Petitioner failed to present evidence that he had been rehabilitated or his payment of taxes while he was a DACA recipient, while simultaneously acknowledging that Petitioner had finished probation and there was no evidence of ongoing drug use, IJ Bond Decision at 58:19-24. As discussed in prior decisions before this Court, the denial of bond by the IJ because Petitioner, rather than Respondents, was unable to carry the burden of showing that he was neither dangerous nor a flight risk "seriously impacted his ability to secure bail" due to the "informational asymmetry" caused by Petitioner's confinement. *Singh v. Francis*, 26-CV-00344 (OEM), 2026 WL 507890, at *5 (E.D.N.Y. Feb. 24, 2026); *Habib v. Maldonado*, 2026 WL 1088618, at *4 (E.D.N.Y. Apr. 22, 2026).

"Moreover, 'as the period of . . . confinement grows,' so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention." *Singh*, 2026 WL 507890, at *5 (quoting *Zadvydas*, 533 U.S. at 701). The requirement that Petitioner bear the burden of proof coupled with his detention for eight months, *see Gunes v. Warden, Broome Cnty. Corr. Facility*, 9:26-cv-00525 (BKS), 2026 WL 1383137, at *5 (N.D.N.Y. May 18, 2026) (reasoning detention nearing six months weighed in favor of a burden-shifted bond hearing); *see also Zadvydas*, 533 U.S. at 701 (establishing a presumption of six months as a constitutionally reasonable period for detention under 8 U.S.C. § 1231(a), after which the

petitioner may be entitled to a burden-shifted bond hearing), favors the need for further due process.

As for the third prong, Respondents' interest in detaining "individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) (first quoting *Velasco Lopez*, 978 F.3d at 854; then quoting *Zadvydas*, 533 U.S. at 690). As in *Velasco Lopez*, the Court finds that "shifting the burden of proof to the Government to justify continued detention promotes the Government's interest" as it "minimize[es] the enormous impact of incarceration in cases where it serves no purpose." *Velasco Lopez*, 978 F.3d at 854. The Government has "no interest in the continued incarceration of an individual who it cannot show to be either a risk or a danger to his community." *Id.* at 857. Therefore, the third prong of the *Mathews* inquiry favors Petitioner.

Accordingly, Petitioner's ongoing detention violates his due process rights. *See Valdez*, 803 F. Supp. 3d at 219; *Lopez*, 2018 WL 2932726, at *15; *see also Singh*, 2026 WL 507890, at *5. Given the deprivation of Petitioner's liberty, the absence of deliberative process in the form of a constitutionally adequate bond hearing, and the statutory and constitutional rights implicated, a writ of habeas corpus is the only form of relief and the most appropriate remedy.

**B. Procedural Protections Due**

Petitioner argues that he is entitled to immediate release and, alternatively, a burden-shifted bond hearing held by this Court. *See* Am. Pet. ¶ 101. Although Respondents argue that a burden-shifted bond hearing is not provided for by statute, regulation, or case law, Return at 5, they conceded at the Hearing that they were unaware of any case law that would prohibit the Court from ordering a burden-shifted bond hearing.

"Ordinarily, the remedy for unreasonably prolonged detention is a constitutionally adequate bond hearing before an IJ." *Sosa v. Warden of Orange Cnty. Corr.*, 26 Civ. 2304 (DEH), 2026 WL 1803814, at *7 (S.D.N.Y. June 23, 2026) (quoting *W.A.C. v. Rokosky*, 26 Civ. 3419, 2026 WL 1383150, at *6 (D.N.J. May 18, 2026); *see also D.C. v. Noem*, 825 F. Supp. 3d 309, 327 (S.D.N.Y. 2026) (granting request for bond hearing and denying request for immediate release because grant of bond hearing mooted request for release). This Court has previously ordered a burden-shifted bond hearing when granting a petition by a detainee claiming that their detention has been unreasonably prolonged. *See Singh*, 2026WL 507890, at *5. Accordingly, Petitioner's request for a bond hearing is granted.

Regarding Petitioner's request that this Court, not an IJ, conduct his bond hearing, such request is denied. The Court does not find that the circumstances here provide "basis to depart from the common practice of ordering a bond hearing before an IJ, whose expertise and experience in this area will enable efficient resolution of the proceedings consistent with immigration court precedents." *D.C.*, 825 F. Supp. 3d at 325. *Contra L.G.M. v. LaRocco*, 788 F. Supp. 3d 401, 405-06 (E.D.N.Y. 2025) (determining that the district court could hold the bond hearing given the noncitizen's complicated detention history that merited heightened scrutiny).

**CONCLUSION**

For the foregoing reasons, the Amended Petition is granted. Respondents are ordered to provide Petitioner with an individualized bond hearing before an immigration judge by September 18, 2026. At that hearing, the Government shall bear the burden of demonstrating, by clear and convincing evidence, that Petitioner is a danger to the community or a risk of flight, *see Velasco Lopez*, 978 F.3d at 855-56, and at which the adjudicator must consider alternatives to detention as to both elements, as well as ability to pay in setting any bond. In the event Respondents fail to

provide Petitioner with such a bond hearing by September 18, 2026, Respondents are ordered to release Petitioner immediately.

By September 21, 2026, Respondents shall certify compliance with this order by filing on the docket Petitioner's constitutionally adequate bond hearing date and outcome and/or release date.

The Clerk of Court is respectfully directed to enter judgment in accordance with this Memorandum and Order and close this case.

SO ORDERED.

*/s/*
ORELIA E. MERCHANT
United States District Judge

September 10, 2026
Brooklyn, New York